In re Petition for DISCIPLINARY ACTION AGAINST Thomas L. ILIFF, an Attorney at Law of the State of Minnesota.

No. C6–91–2041.

Supreme Court of Minnesota.

July 17, 1992.

Reinstatement Granted Oct. 21, 1992.

Thomas C. Vasaly, First Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

Steven A. Peterson, Crystal, for respondent.

PER CURIAM.

Following a hearing, respondent Thomas L. Iliff was found to have violated several Rules of Professional Conduct in his representation of clients in a claim for property damage. The matter is now before us on the referee's report and recommendation of an indefinite suspension with right to apply for reinstatement (with probation) after 1 year.

Respondent was admitted to the Minnesota bar in 1974. He is a sole practitioner. In April 1986, respondent was retained by two property owners to negotiate settlement of a claim against a developer who had mistakenly removed a swath of trees from their Carlton County property. In February 1987, when preliminary negotiations had failed to settle the matter, the clients asked respondent to commence a lawsuit on a one-third contingency basis. Because the developer had admitted liability, the only issue was the extent of damages.

From 1987 until 1990, respondent's only action on the file was to prepare two draft versions of a summons and complaint and a set of discovery requests. In 1989, under pressure from the clients, respondent filed a summons and complaint in the district court for Dakota County where the clients resided, but he did not serve the summons and complaint on the opposing parties. Indeed, after January 1987, respondent had no communication in any form with the opposing parties. Despite not having taken any meaningful action, respondent falsely continued to assure the clients of his "good progress." In September 1990, the clients filed an ethics complaint, which the Director's office forwarded to respondent. After the clients refused to obtain different counsel, respondent told his clients that he had negotiated a $4,000 settlement offer from the opposing parties. He stated that he would also refund the clients' $500 cost advance. The clients accepted the settlement. A month later respondent met with the clients and gave them a check for $4,500 drawn from his trust account. The clients signed a release, drafted by respondent, wherein respondent and the opposing parties were named as releasees. Respondent did not advise the clients that they should consult another attorney before releasing him from liability. Minn.R.Prof.Conduct 1.8(h). The clients were unaware that the settlement payment was from respondent personally and that the opposing parties knew nothing about the settlement transaction.

On the same date as the "settlement," respondent sent a letter to the attorney to whom the ethics complaint was assigned for investigation. In that letter, respondent stated that the file "has been investigated and pursued." Some months later, in May of 1991, the investigator met with respondent, who then admitted that all of the settlement funds had come from him. When asked why the release form included his name, respondent falsely replied that it was his standard practice. When asked why he had not sought a default judgment against the opposing parties, respondent falsely stated that he could not give the reason. Upon checking with the clerk of court, the investigator discovered that there was no affidavit of service for the summons and complaint. Respondent then admitted that the suit papers had never been served.

Based on these facts, the referee concluded that respondent had neglected the case, made false statements to the clients about the progress of the case, and had concocted a fictitious settlement. The referee also found that respondent had failed to advise the clients to consult outside counsel before signing the release, and had made false and misleading responses to the clients' ethics complaint.[1]

Because respondent ordered a transcript, the referee's findings are not conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). This court accords great deference to the referee on disputed factual questions, particularly when the dispute involves conflicting witness testimony. *In re Ruhland*, 442 N.W.2d 783, 786 (Minn.1989). The court has carefully reviewed the record and finds the referee's findings to be supported by full, clear and convincing evidence. *See In re Simmonds*, 415 N.W.2d 673, 676 (Minn. 1987).

The question then becomes the appropriate sanction for respondent's misconduct. This court determines sanctions on a case-by-case basis by examining the specific acts of misconduct together with any aggravating or mitigating circumstances. *In re Isaacs*, 451 N.W.2d 209, 211 (Minn.1990). The court considers the nature of the misconduct, the cumulative weight of the violations, and the harm to the public and to the profession. *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988).

Respondent's misconduct essentially falls into two categories: (1) client neglect and misrepresentation, and (2) fraudulent response to an ethics complaint.[2] Both involve serious misconduct and warrant discipline, including suspension. Suspension is warranted when the lawyer knowingly engages in conduct that violates a duty to the profession and causes injury to the client, the public, or the legal system. *See* ABA *Standards for Imposing Lawyer Sanctions* (1991), Standard 7.2.

An added factor here is that respondent has a prior disciplinary record. At the time respondent was retained by the clients in this case, he was on private probation for other client neglect. As part of that probation, he executed a stipulation in which he agreed to "initiate and maintain office procedures which * * * insure that respondent regularly reviews each and every file and completes legal matters on a timely basis." The court expects an attorney to exhibit a renewed commitment to ethical behavior following a disciplinary proceeding. *Isaacs*, 451 N.W.2d at 211–12.

Respondent says his clients were difficult and demanding and that he had a "mental block." He contends that reprimand and probation would be appropriate in this case, citing the case of *In re Freidson*, 426 N.W.2d 188 (Minn.1988). The attorney in *Freidson*, however, did not have a prior neglect citation, nor did his disciplinary violations include lying to the ethics investigator.

We believe a suspension is appropriate. We do note that respondent's misconduct in this case involved only the one file. Any length of suspension, it appears, will have a substantial impact on respondent's practice as a sole practitioner. The referee noted that if it were not for the prior admonition and probation, he would have recommended a public reprimand and probation.

We conclude that a suspension of 3 months is appropriate. *See In re Bernstein*, 404 N.W.2d 804, 805 (Minn.1987) (while great weight is given the referee's

---

1. The referee found that this misconduct violated Minn.R.Prof.Conduct 1.3, 1.4, 1.8, 8.1 and 8.4(c). The referee also found that respondent had violated Rule 1.15(a) by placing a $100 retainer in his business account instead of in his trust account and by commingling $4,000 of his personal funds in his trust account.

2. The referee found trust account violations but did not take them into account in his recommendation for discipline because respondent had received subsequent training on trust account procedures. Thus, it appeared that the accounts were presently being kept properly. Similarly, the referee found a Rule 1.8 violation, but stressed that the other two areas of misconduct were of greater concern under the facts of this case.

recommendation, final responsibility for determining the appropriate discipline must rest with this court). The suspension will begin 10 days from the date of filing of this opinion. Following the 3–month suspension, respondent shall be placed on supervised probation for 2 years. The Rule 18(c) requirements for reinstatement will not apply, but respondent shall pay $750 in costs and disbursements to the Director pursuant to Rule 24, RLPR.

SO ORDERED.