In re Petition for DISCIPLINARY ACTION AGAINST David Lawrence McCORMICK, a Minnesota Attorney, Registration No. 259500.

No. A11–1052.

Supreme Court of Minnesota.

Aug. 22, 2012.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

David Lawrence McCormick, Minneapolis, MN, pro se.

## OPINION

PER CURIAM.

On May 2, 2011, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging that respondent, David Lawrence McCormick, while representing a defendant in a homicide case, instructed an investigator to interview an anticipated witness in the case without first seeking and obtaining permission from the witness' attorney, in violation of Minn. R. Prof. Conduct 4.2 and 8.4(d). Pursuant to Rule 14, Rules on Lawyers Professional Responsibility (RLPR), we assigned a referee and a hearing was held. The referee issued findings of fact, conclusions, and a recommendation. The referee found McCormick was representing R.S. in a homicide case. M.S., a co-defendant in the same matter, entered into a plea agreement with the state and his sentencing "was deferred until after [he] testified at [R.S.'s] trial." Sometime around September 15, 2010, McCormick asked an investigator to meet with M.S. and ask him questions about how he planned to testify at R.S.'s trial; the investigator did so and took a statement from M.S. about facts relating to the homicide charges pending against M.S. and R.S. McCormick knew M.S. was represented by counsel, but he "neither sought nor received" M.S.'s lawyer's permission to communicate with M.S. about the matter.

Based on these findings, the referee concluded that McCormick violated Minn. R.

Prof. Conduct 4.2 and 8.4(d) and the terms of our June 11, 2009, order reinstating McCormick to the practice of law. The referee also found the following aggravating factors: (1) McCormick's prior disciplinary history;[1] (2) McCormick's current misconduct occurred while he was on probation; and (3) McCormick's experience as a criminal defense lawyer. The referee found no mitigating factors and recommended that McCormick be suspended for 60 days.

The Director has the burden of proving by clear and convincing evidence that the respondent violated the Rules of Professional Conduct. *In re Westby*, 639 N.W.2d 358, 367 (Minn.2002). Because McCormick ordered a transcript of the disciplinary hearing, the referee's findings of fact and conclusions of law are not conclusive. *See* Rule 14(e), RLPR. We give "great deference" to the referee's findings of fact as long as they have evidentiary support in the record and are not clearly erroneous. *In re Winter*, 770 N.W.2d 463, 467 (Minn.2009) (quoting *In re Moulton*, 721 N.W.2d 900, 905 (Minn. 2006)). We review the referee's legal conclusions de novo. *In re Montez*, 812 N.W.2d 58, 66 (Minn.2012); *In re Aitken*, 787 N.W.2d 152, 158 (Minn.2010).

Minnesota Rule of Professional Conduct 4.2 says:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other law-

---

1. McCormick's disciplinary history includes a 90–day suspension in March 2006. *In re McCormick*, 710 N.W.2d 563 (Minn.2006). In March 2007, we extended McCormick's suspension for an additional 30 days. *In re McCormick*, 728 N.W.2d 496 (Minn.2007).

On June 11, 2009, we reinstated McCormick and placed him on 2 years of supervised probation. *In re McCormick*, 767 N.W.2d 1 (Minn.2009). Additionally, McCormick has been admonished on three separate occasions.

yer or is authorized to do so by law or a court order.

McCormick argues that he did not violate Rule 4.2 because his investigator did not speak with M.S. about the "subject of the representation."[2] McCormick contends M.S. was not represented in connection with his role as a witness in R.S.'s trial and that, after M.S. pleaded guilty and his case was severed from R.S.'s case, M.S. was no longer a party in the same matter as R.S. The referee found, however, that M.S. was represented by another lawyer in the matter (i.e., the homicide charges) at the time of the interview and that the communication was about that matter. The record supports the referee's findings; thus, we conclude that they are not clearly erroneous.

Relying on *State v. Miller*, 600 N.W.2d 457 (Minn.1999), McCormick also argues that his conduct was "authorized ... by law" because he was investigating a crime and his client had the right to confront the witnesses against him. In *Miller*, we concluded that Rule 4.2 was violated when law enforcement officers took a statement from an individual represented by counsel without counsel's consent and the officers' conduct was ratified by the county attorneys. *Id.* at 464. We discussed the purpose of Rule 4.2, which is the protection of a represented person from the possibility of being taken advantage of by an opposing attorney. *Id.* at 463. We also made clear that the focus of the rule as applied in *Miller* was not "protecting the client's right *to* counsel," but was "protect[ing] the right *of* counsel to be present during any communication between the counsel's client and opposing counsel." *Id.* at 464.

■ Further, we explained that "the 'authorized by law' exception to [Rule] 4.2" permits "legitimate investigative processes [to] go forward without violating [Rule] 4.2 even when the target of the investigation is represented by counsel," but that the rule does not permit such an investigation if it is "egregious" in that it "impairs the fair administration of justice." *Id.* at 467. However, we concluded that the "authorized by law" exception did not apply to the facts of *Miller*. *Id.* at 468.

Given what we said in *Miller*, McCormick's reliance on *Miller* is misplaced. The investigation discussed in *Miller* that could have been "authorized by law" was a criminal investigation conducted by law enforcement agencies, not defense attorneys. McCormick suggests he needed to speak with M.S. in order to satisfy his duty to vigorously defend his client. McCormick, however, could very easily have requested permission from M.S.'s attorney to interview M.S.; if the request was denied, he could have sought authorization from the court. On that basis, we conclude that the undisputed findings of fact support the referee's conclusion that McCormick violated Rules 4.2 and 8.4(d).

■ We turn next to the appropriate discipline to impose. McCormick challenges the referee's finding that his disciplinary history is an aggravating factor, contending that past misconduct can be an aggravating factor " 'only' when [that] misconduct is similar" to the current misconduct. McCormick admits our "cases do not say [this] expressly," and we have found an attorney's disciplinary history to

---

**2.** It is undisputed that McCormick's investigator, and not McCormick himself, spoke with M.S. A lawyer is responsible for the conduct of his or her investigator if the lawyer orders or ratifies the conduct. *See State v. Miller*, 600 N.W.2d 457, 464 (Minn.1999); Minn. R. Prof. Conduct 5.3(c)(1). While the disciplinary petition did not allege a violation of Rule 5.3(c)(1), McCormick does not contend that he cannot be disciplined for his investigator's conduct.

be an aggravating factor even when it was not similar to the current misconduct. *See, e.g., In re Mayrand,* 723 N.W.2d 261, 269 (Minn.2006). Therefore, we reject McCormick's contention that past disciplinary history can only constitute an aggravating factor when it is similar to current misconduct. McCormick's argument that his experience as a criminal defense attorney is not a valid aggravating factor is also contrary to law. *See In re Rebeau,* 787 N.W.2d 168, 176 (Minn.2010) ("[S]ubstantial experience as a lawyer may constitute an aggravating factor.").

 The referee recommended that McCormick be suspended for a minimum of 60 days. The Director agrees. "Although we place great weight on the recommendation of the referee as to discipline, we retain the final responsibility for determining the appropriate sanction." *In re Holker,* 730 N.W.2d 768, 775 (Minn. 2007). We agree that a 60–day suspension is the appropriate discipline.

Accordingly, we order that:

1. Respondent David Lawrence McCormick is suspended from the practice of law, effective 14 days from the date of filing of this order, for 60 days. Respondent may apply for reinstatement by filing an affidavit, pursuant to Rule 18(f), RLPR;

2. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals);

3. Respondent shall pay $900 in costs and disbursements pursuant to Rule 24, RLPR;

4. Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that he is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court; and

5. Within one year of the date of filing of this order, respondent shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination. Failure to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.

So ordered.